**Certiorari Granted, June 14, 2013, No. 34,150**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-070**

**Filing Date: March 13, 2013**

**Docket No. 30,447 consolidated with No. 31,491**

**AGALELEI KIMBRELL, also known as**
**LILY KIMBRELL, by and through**
**her next friend and parent**
**W. DAVID KIMBRELL,**

       **Plaintiff-Appellant,**

**v.**

**LORRAINE KIMBRELL and**
**KATHRIN M. KINZER-ELLINGTON,**

       **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton and Barbara Vigil, District Judges**

Gary W. Boyle
Santa Fe, NM

for Appellant

Stiff, Keith & Garcia, LLC
Ann L. Keith
Albuquerque, NM

Michael Schwarz
Santa Fe, NM

for Appellee Lorraine Kimbrell

Riley, Shane & Keller, P.A.
Courtenay L. Keller
Kristin J. Dalton

Albuquerque, NM

for Appellee Kathrin Kinzer-Ellington

Kathrin Kinzer-Ellington, LLC
Kathrin Kinzer-Ellington
Santa Fe, NM

Guardian ad Litem

**OPINION**

**HANISEE, Judge.**

**{1}**     David Kimbrell's (Father) consolidated appeals arise from divorce and child custody proceedings that began in May 2006 between Father and Lorraine Kimbrell (Mother). Father first appeals the district court's dismissal of a separate tort action brought by Father on behalf of his eldest child (Daughter) against both Mother and the Guardian Ad Litem (the GAL). Father also appeals the district court's order requiring him to remove a document discussing the GAL from his website and enjoining him from republishing the material. We affirm in part and reverse in part the district court's dismissal of the tort action, and reverse and remand the district court's order with respect to the website for findings regarding defamation.

**I.     BACKGROUND**

**{2}**     At the time divorce proceedings commenced, Mother and Father had four children (the Children), including Daughter. A year into the divorce case, at Father's request, the district court appointed the GAL to represent the interests of the Children. Shortly thereafter, the GAL issued her report and recommendations in which she advised reinstating contact between Mother and the Children, as well as placing one of the Children with Mother. With some modifications, the court largely adopted the GAL's recommendations. Thereafter, Father became displeased with the GAL and the court's order. During the following three years of highly contentious custody proceedings, Father made five attempts to have the GAL removed. Each request was denied by the district court. Father also filed two lawsuits against the GAL, one in federal court in June 2009, and another shortly thereafter in state district court. In addition, Father filed complaints against the GAL with the Disciplinary Board of the New Mexico Supreme Court. Father's lawsuits were subsequently dismissed. On appeal, we evaluate the dismissal of the latter lawsuit and proceedings related to Father's internet publication of material related to his case.[1]

---

[1] We note that this is not the first appeal in this contentious divorce case. *See Kimbrell v. Kimbrell*, No. 29,752, slip op. (N.M. Ct. App. Mar. 31, 2010) (discussing

**{3}** The lawsuit at issue was brought by Father on behalf of Daughter as her next friend and parent against both Mother and the GAL, naming the GAL in her capacity as guardian ad litem. The complaint alleged that Mother battered, assaulted, and intentionally inflicted emotional distress on and committed prima facie tort against Daughter and that the GAL intentionally inflicted emotional distress on, breached her fiduciary duty to, invaded the privacy of, and committed prima facie tort against Daughter. Mother and the GAL moved to dismiss the suit, arguing that Father lacked standing to sue on behalf of Daughter and that the GAL was immune from suit. The district court granted the motions to dismiss, concluding that Father lacked standing to sue Mother and the GAL. Father now appeals from this dismissal.

**{4}** After bringing the state lawsuit, Father filed his fifth and final motion to remove the GAL in district court in January 2010. In March 2010, Father, through his attorney, filed his first disciplinary complaint against the GAL with the Disciplinary Board of the New Mexico Supreme Court, alleging that the GAL had engaged in unprofessional conduct. The Disciplinary Board conducted an investigation and determined that the GAL had not engaged in unprofessional conduct and that the complaint was without merit. In May 2010, the district court denied Father's fifth motion to remove the GAL. In its written order of denial, the court found that (1) Father's motion to remove the GAL raised issues previously addressed by the court; (2) the motion was an attack on the GAL's ability to represent the Children; (3) Father inappropriately viewed the GAL as an opponent; (4) Father's continuing attacks on the GAL were becoming problematic for the administration of justice; and (5) Father's continuing attacks on the GAL had become abusive and unfair. The district court ordered both Father and his attorney to refrain from filing any complaint, motion, or other "device" pertaining to the GAL without leave of the court.

**{5}** In July 2010, Father sought permission to file yet another disciplinary complaint against the GAL. Rather than directly denying Father's motion, the district court entered a preliminary injunction that again reprimanded Father for "improper" behavior and additionally prohibited Father from communicating with the media, the Department of Justice, or the Children's biological parents regarding his complaints about the GAL. Father then circumvented the district court's initial order, which prohibited Father from filing any pleading or device against the GAL, by forming and acting through an organization he named "Stop Court Abuse of Children." Through the organization, Father filed a new disciplinary complaint, without leave of the court, against the GAL and her former law partner and subsequently published the new complaint on a website he created called StopCourtAbuseOfChildren.com. His organization's website solely discussed the custody case at issue in this appeal and displayed copies of documents related to the custody proceeding, including: the newest Disciplinary Board complaint against the GAL; an emergency motion for an ex parte order to modify periods of responsibility for one of the

---

Father's appeal of the district court's rulings on spousal support, child support, termination of joint custody, procedural matters, and contempt sanctions).

3

Children, to which was appended a letter written by that child; and the GAL's motion to continue residential psychiatric treatment of Daughter.

**{6}** On March 28, 2011, the GAL requested that the district court issue a permanent injunction requiring Father to remove the material from the internet and prohibiting Father from publishing any information about the GAL in the future. At the June 22, 2011, hearing on her motion, the GAL argued that Father's publication was defamatory and therefore constituted speech that could be permissibly restrained by the district court. In response, Father contended that the district court could not issue the requested injunction since it no longer had subject matter jurisdiction over the case under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA). By then, Mother and three of the Children had relocated to Canada, and Mother had agreed in a settlement with Father that the district court no longer had jurisdiction over the custody proceedings. At the hearing on the GAL's motion, Father also argued that the GAL's requested injunction would violate his right to freedom of speech.

**{7}** On July 1, 2011, the court issued an order (the Internet Order) compelling Father to remove the information he had posted about the GAL and her former law partner from the internet because it was "designed to harass and intimidate the [GAL] in the exercise of her duties." The court also stated that Father "is enjoined from re-publishing these materials or any part thereof about the [GAL], her firm and former law partner in the future." Father's second appeal challenges the legality of the district court's Internet Order.

**{8}** We separately note that in May 2011, after filing briefs in the appeal related to Father's standing in the personal injury action, Father and Mother entered into a financial settlement agreement (the Agreement) related to their divorce. Within the Agreement, Father released Mother from all liability during the period of time that encompassed the personal injury action at issue in this appeal. In exchange, Mother affirmed that jurisdiction over the parties' child custody matters no longer existed in New Mexico. The Agreement, however, did not specifically release the GAL. After the Agreement was executed, Mother and the GAL submitted a joint motion to dismiss Father's first appeal as moot based on the Agreement. Father opposed the motion. In this consolidated opinion, we now address Mother's and the GAL's joint motion to dismiss, the district court's dismissal of Father's tort lawsuit, and the district court's issuance of its Internet Order.

## II.    DISCUSSION

### A.    The District Court Properly Dismissed Part of Father's Lawsuit Brought on Behalf of Daughter

**{9}** Father contends that the district court improperly dismissed his lawsuit against Mother and the GAL for lack of standing. In district court, the GAL attached documentary exhibits to her motion to dismiss, and it appears that the district court considered those and additional documents outside of the pleadings in issuing its order of dismissal. In fact, the

4

district court expressly took notice of all matters involved in the underlying divorce and custody proceedings and of its own past orders regarding the GAL's appointment. "Where matters outside the pleadings are considered on a motion to dismiss for failure to state a claim, the motion becomes one for summary judgment." *Foster v. Sun Healthcare Group, Inc.*, 2012-NMCA-072, ¶ 6, 284 P.3d 389 (alteration, internal quotation marks, and citation omitted); *Emery v. Univ. of N.M. Med. Ctr.*, 96 N.M. 144, 147, 628 P.2d 1140, 1143 (Ct. App. 1981) ("The affidavit and attachments were before the [district] court without objection on [the] defendant's part. These items converted the 'motion to dismiss' hearing into one for summary judgment, and the order dismissing with prejudice was a summary judgment in favor of [the] defendant." (internal citation omitted)), *abrogated on other grounds by Maestas v. Zager,* 2007-NMSC-003, 141 N.M. 154, 152 P.3d 141. Thus, we review the order as an order granting summary judgment.

**{10}**     A district court's grant of summary judgment is reviewed de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. "In New Mexico, summary judgment may be proper when the moving party has met its initial burden of establishing a prima facie case for summary judgment." *Id.* ¶ 10. "By a prima facie showing is meant such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Goodman v. Brock*, 83 N.M. 789, 792-93, 498 P.2d 676, 679-80 (1972) (citations omitted). Once the moving party has made a prima facie case, "[t]he party opposing the summary judgment motion must adduce evidence to justify a trial on the issues." *Romero*, 2010-NMSC-035, ¶ 10 (alteration in original). "A party may not simply argue that such [evidentiary] facts might exist, nor may it rest upon the allegations of the complaint." *Id.* (alteration in original) (internal quotation marks and citation omitted). In addition, we review de novo whether a party is entitled to an appeal. *State v. Wilson*, 2005-NMCA-130, ¶¶ 5-6, 14-15, 138 N.M. 551, 123 P.3d 784 (analyzing whether an appeal is moot). Moreover, "[w]hether a party has standing to bring a claim is a question of law which we review de novo." *Prot. & Advocacy Sys. v. City of Albuquerque*, 2008-NMCA-149, ¶ 17, 145 N.M. 156, 195 P.3d 1.

**{11}**     As we explain below, because the case against Mother is moot, we only address standing with regard to Father's claims against the GAL. Because standing is not dispositive here, we also address the GAL's immunity from suit in her capacity as guardian ad litem because that question was properly preserved by her assertion of judicial immunity in district court. *See State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 ("Under the right for any reason doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." (internal quotation marks and citation omitted)).

### 1.     Only Father's Lawsuit Against Mother Is Moot

**{12}**     In Father's written objection to the joint motion brought by Mother and the GAL to dismiss the appeal, he affirmed the release of Mother from liability with regard to the tort

5

action at issue in this case. In accordance with the Agreement he entered into with Mother in May 2011, Father was precluded from suing Mother on behalf of Daughter for any claims that arose prior to May 31, 2011. Therefore, the issue of whether Father has standing to sue Mother on behalf of Daughter for the asserted cause of action that arose in or prior to 2009 is moot as to Mother in light of the fact that Father's claim against her is void. Thus, we grant Mother's and the GAL's joint motion as to Mother.

**{13}** As to her own basis for dismissal, the GAL argues that "the execution of the [Agreement] and dismissal of all claims against [Mother] necessitates the dismissal of the claims made against [the GAL]" insofar as the complaint states that they acted jointly. The GAL asserts that "[t]he injury or injuries alleged in [Father]'s [c]omplaint are the same as to both [Mother and the GAL] and are indivisible." As such, the GAL states that "[s]uch claims cannot survive the release of the joint party or co-conspirator when there is an indivisible injury."

**{14}** Even if some of the claims could be construed as civil conspiracy allegations, we disagree with the GAL's contention that she and Mother must be treated alike for purposes of dismissal. In New Mexico, "[a] civil conspiracy must . . . involve an independent, unlawful act that causes harm—something that would give rise to a civil action on its own." *Ettenson v. Burke*, 2001-NMCA-003, ¶ 12, 130 N.M. 67, 17 P.3d 440. A plaintiff's settlement with the conspirator who committed the underlying unlawful act, which was the objective of the conspiracy, does not absolve other conspirators of liability. "The purpose of a civil conspiracy claim is to impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members." *Id.* (citation omitted).

**{15}** "Under the theory of joint and several liability, each tortfeasor is liable for the entire injury, regardless of proportional fault, leaving it to the defendants to sort out among themselves individual responsibility based on theories of proportional indemnification or contribution." *Payne v. Hall*, 2006-NMSC-029, ¶ 11, 139 N.M. 659, 137 P.3d 599. Therefore, in a case like this, where only one conspirator remains subject to suit, "it should not matter whether [the defendant] actively or passively participated in the conspiracy . . . if injury to the [plaintiff] was the object of the conspiracy. In such a case, [the defendant] is liable for the wrongful acts leading to the [plaintiff's] injuries." *York v. InTrust Bank, N.A.*, 962 P.2d 405, 418 (Kan. 1998); *see Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 689 (D. Del. 2010) ("Conspirators are liable on a joint and several basis and, as such, [the] plaintiff can obtain complete relief without joining all possible co-conspirators. . . . [A] case cannot be dismissed for nonjoinder even though only one conspirator is subject to the jurisdiction of the court." (internal quotation marks and citation omitted)). Thus, Daughter need not sue Mother to recover for injuries incurred as the intended result of a conspiracy involving Mother and the GAL, even if Mother alone committed the independent unlawful act that causes Daughter harm. As long as the independent unlawful act would have been actionable but for the settlement, a cause of action still exists against any conspirator who did not participate in the Agreement.

6

**{16}** We also note that New Mexico public policy encourages settlement agreements. *Bd. of Educ. v. Dep't of Pub. Educ.*, 1999-NMCA-156, ¶ 14, 128 N.M. 398, 993 P.2d 112. Thus, consistent with our case law and public policy, we cannot discourage civil settlement agreements by requiring all conspirators to be joined in a single cause of action in order for a plaintiff to obtain recovery. We therefore deny Mother's and the GAL's joint motion to dismiss the appeal as to the GAL based on our conclusion that Father's Agreement with Mother does not render the lawsuit against the GAL moot.

## 2. Father Has Standing to Sue the GAL

**{17}** The GAL also argues and the district court agreed that Father lacked standing to sue the GAL. The GAL asserts that the nature of her appointment as guardian ad litem supersedes Father's natural guardianship. She also contends that allowing Father to sue the GAL would violate public policy supporting the appointment of legal guardians for minors or otherwise incapacitated individuals and would frustrate the court's interest in the "orderly development of the lawsuit."

**{18}** Generally, Rule 1-017 NMRA confers standing upon a parent to bring suit on behalf of his or her minor child. *Jaramillo v. Heaton*, 2004-NMCA-123, ¶ 16, 136 N.M. 498, 100 P.3d 204 ("[Rule 1-017] permits a parent to bring a cause of action on behalf of a minor child[.]"); Rule 1-017(C) (stating that general guardians or other like fiduciaries, next friends, and guardians ad litem may sue on behalf of infants or incompetent persons). In *Collins ex. rel. Collins v. Tabet*, 111 N.M. 391, 401-02, 806 P.2d 40, 50-51 (1991), our Supreme Court explicitly held that parents may sue their child's guardian ad litem for injuries caused by the guardian to the parents' child if the guardian acts as a private advocate or exceeds the scope of his/her appointment as an arm of the court. In so ruling, our Supreme Court observed that "[i]f there are public policy reasons to grant immunity to guardians ad litem who function primarily as advocates rather than as court assistants, such as the apprehension that private attorneys will be unwilling to accept guardian ad litem appointments, then a legislative grant of immunity might well be warranted." *Id*. at 402, 806 P.2d at 51.

**{19}** Based on our Supreme Court's statement of law and policy in *Collins* and absent intervening legislative protections, we cannot now extend protections to guardians ad litem other than those currently provided to them through judicial immunity. Under our law as it exists today, parents retain standing to sue their child's guardian on behalf of their child, subject to the guardian's limited immunity as an arm of the court. We thus conclude that Father has standing to assert the tort cause of action in this case. We reverse the district court's contrary determination.

## 3. The GAL Is Immune in Part From Suit

**{20}** In *Collins*, our Supreme Court made clear the purpose for its extension of judicial immunity to guardians ad litem was in order to prevent "harassment and intimidation from

7

dissatisfied parents" and to avoid "distortion of the investigative help and other assistance provided [by guardians] to the court." *Collins*, 111 N.M. at 397, 401, 806 P.2d at 46, 50 (internal quotation marks and citation omitted). The Court explained that "[a] guardian ad litem[, acting as an arm of the court,] must also be able to function without the worry of possible later harassment and intimidation from dissatisfied parents." *Id.* at 397, 806 P.2d at 46. Yet, as we noted above, a guardian ad litem's immunity is not absolute.

**{21}** We employ a functional analysis to determine whether a guardian ad litem is immune from suit in his or her appointed capacity. *Id.* at 395-96, 806 P.2d at 44-45. Under this approach, if the guardian ad litem "was appointed and performed as an 'arm of the court,' [s]he is absolutely immune." *Id.* at 402, 806 P.2d at 51. But, "[w]here the guardian's functions embrace primarily the rendition of professional services in the form of vigorous advocacy on behalf of the child, . . . the attorney rendering professional service to the child should be held to the same standard as are all other attorneys in their representation of clients." *Id.* at 401, 806 P.2d at 50. Such a circumstance arises either when the guardian's appointment establishes his/her role as a private advocate for the child, or when the guardian is appointed to assist as an arm of the court but then exceeds the scope of that appointment. *Id.* at 402, 806 P.2d at 51.

**{22}** In *Collins*, our Supreme Court further stated that "[c]onsiderations favoring immunity might well be present when a guardian ad litem is appointed . . . under NMSA 1978, Section 40-4-8 (Repl. Pamp. 1989), to represent minor children in a custody dispute." *Collins*, 111 N.M. at 402, 806 P.2d at 51. Furthermore, in adopting this functional approach, courts around the country have agreed that "a guardian ad litem would be absolutely immune in exercising functions such as testifying in court . . . and making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court, not only in status or denomination but in reality." *Id.* at 396, 806 P.2d at 45 (citation omitted).

**{23}** We note that the functional analysis of a guardian's role is typically a factual inquiry. Nonetheless, "the trial judge, and [appellate courts] on review, [have] important roles to play in assuring that the purpose of the immunity defense is not emasculated by subjecting the person claiming it to the hazards of a trial in every case." *Id.* at 403, 806 P.2d at 52. Our Supreme Court has stated in this context that "[w]here the facts are clear, summary judgment is an important safeguard in preventing frivolous or harassing suits, and trial judges should not hesitate to grant directed verdicts and otherwise perform their function of deciding issues of law in appropriate cases." *Id.* at 403-04, 806 P.2d at 52-53. It is the court's duty "[i]n all cases, [to] be vigilant to guard against dilution of the purpose of the defense through unjustified exposure of the defendant to the burdens and risks of a trial." *Id.* at 404, 806 P.2d at 53.

**{24}** This case presented an appropriate opportunity for the district court to evaluate the issue of immunity without the aid of a jury because the facts of the GAL's appointment and Father's allegations regarding the GAL's conduct were clearly established. Moreover, we can conclude in part that the GAL was immune and affirm in part the district court under the

right for any reason doctrine because the court found below that the GAL was appointed as an arm of the court and, as a matter of law, most of the conduct alleged by Father is insufficient to prove that the GAL exceeded the scope of her appointment.

{25} According to the attachments produced by the GAL, the district court stated that the GAL was appointed under NMSA 1978, Section 40-4-8 (1993), and Rule 1-053.3(A) NMRA. Section 40-4-8(A) gives the district court discretion to appoint, either sua sponte or upon application of a party, an attorney at law as a guardian ad litem for minor children in a custody dispute. As stated above, our Supreme Court indicated that immunity would in most instances extend to guardians appointed under Section 40-4-8 to represent children in custody disputes like this one. In addition, Rule 1-053.3(A) states that the guardian ad litem appointed in a custody dispute "serves as an arm of the court and assists the court in discharging its duty to adjudicate the child's best interests." It also explains that "[t]he guardian ad litem appointed under this rule is a 'best interests attorney' who shall provide independent services to protect the child's best interests without being bound by the child's or either party's directive or objectives and who shall make findings and recommendations." Rule 1-053.3(C). Furthermore, in its order of appointment, the district court stated that the GAL "serves as an arm of the court and assists the court in discharging its duty to adjudicate the children's best interests." Thus, we conclude that the district court appointed the GAL as an arm of the court, consistent with the circumstances in which a guardian ad litem is immune. Once appointed, the GAL was expressly required to review relevant records, submit a written report of her investigation, and interview the Children, Mother, Father, any mental health professionals treating the Children, and any other relevant persons. We conclude that, as long as the GAL stayed within the scope of her appointment as an arm of the court, she would be immune from suit for actions or inactions related to the performance of her duties. To determine whether the GAL exceeded the scope of her appointment, we examine conduct asserted within the first amended complaint against the GAL, filed by Father on behalf of Daughter.

{26} Father makes four claims against the GAL, alleging that she (1) intentionally inflicted emotional distress (IIED) on, (2) breached her fiduciary duty to, (3) invaded the privacy of, and (4) committed prima facie torts injuring Daughter. First, with respect to the claim for IIED, Father stated that the GAL "acted together with [Mother] to facilitate the blocking of calls from [Daughter] to her siblings" when instead the GAL should have both reported the issue to the district court and undertaken efforts to correct it. Father complained that Daughter's fragile mental and psychological condition was created in part by the GAL's "repeated interference with [Daughter]'s care and treatment, the [GAL's] repeated exacerbation of the conflict between the parties in the [d]ivorce [p]roceeding[,] and [the GAL's] refusal to represent the best interests of [Daughter]." The complaint further alleged that the tort of IIED was committed when the GAL "obtained medical authorizations from [Daughter] and used those authorizations to obtain access to [Daughter]'s medical records" which the GAL "published" to the district court, Mother, and counsel for the parties in the divorce proceeding "notwithstanding [Daughter]'s desire to maintain the confidentiality of her records." Finally in relation to the IIED claim, Father asserted that the GAL acted "in

9

concert" with Mother to increase conflict between the parties by rejecting settlement offers and failing to advance Daughter's interests by taking action to "correct [Mother's] behavior" when Mother "completely ignored [Daughter] psychologically and emotionally."

**{27}**     Second, Father asserted that the GAL breached her fiduciary duty to Daughter by colluding with Mother to block Daughter's phone calls to her siblings and by disclosing Daughter's medical records to the district court. Third, the complaint stated that the GAL invaded Daughter's privacy by disclosing Daughter's "medical and psychological information" to the district court and parties. Lastly, the complaint restates all of the allegations described above as grounds for prima facie tort.

**{28}**     With one exception, we conclude that Father's allegations relate to the GAL's role and actions as an arm of the court and as a matter of law cannot be deemed to have exceeded the scope of her appointment. With respect to the IIED and prima facie tort claims, Father asserts a general failure by the GAL to advance Daughter's interests. The original order appointing the GAL assigned her the tasks of making recommendations on all issues related to the children, investigating on behalf of the court what constituted the best interests of the children, reporting to parties and the court on issues related to the best interests of the children and otherwise performing the duties of a guardian ad litem. The same order reminded the parties that the GAL "may make recommendations that neither party, nor the children, will like." The order further gave the GAL full access to the children's "medical, therapy, dental, school, court and all other records related to the children." Under the order the GAL's responsibility was to investigate the matter as a whole and report back to the court with her recommendations as to Daughter's best interests. The GAL had a duty to listen to and consider the opinions and desires of Daughter and Father, but had no duty to advocate for their personal positions as such. In fact, if the GAL disagreed with Father or Daughter on a matter she would have a duty to disagree to the court and other parties as she deemed most appropriate. It should be noted also that there are no guarantees that a GAL's judgment will be correct or even wise. But a faulty judgment call by a GAL does not deprive the GAL of the immunity our Supreme Court described in *Collins* so long as the GAL remains within the scope of her appointment.

**{29}**     The allegations in the First Amended Complaint consist for the most part of disagreements with the GAL's judgment calls made within the scope of her appointment or merely assert inadequate, incomplete, or excessive performance of her tasks. For example, the complaint asserts causes of action for IIED, breach of fiduciary duty and prima facie tort based on the GAL's alleged failure to report certain details regarding Mother's relationship with Daughter and the failure to report Mother's efforts to block contact between Daughter and her siblings. In our view these acts or failures to act on the part of the GAL—assuming as we must that they are true—fall within the scope of the district court's appointment order, Section 40-4-8 and Rule 1-053.3. As such, the GAL would be immune from suit for these alleged failures.

**{30}**     Furthermore, as an arm of the court, the GAL had a duty to report to the court

10

whether proposed settlements were in the Children's best interests. To the extent that the GAL advised the court for or against proposed settlements, that too was within the sphere of her responsibility. Lastly, the allegation that the GAL disclosed Daughter's medical records to the district court and the parties, which is related to all four claims against the GAL, involves actions also directly encompassed within a guardian's statutory and rule-based duties in a custody proceeding. According to the district court's order and under Rule 1-053.3(C), the GAL was required to "make findings and recommendations" to the district court regarding the best interests of the Children. In gathering and disclosing the records, she was acting as an investigatory arm of the court and, as such, is immune from suit for such actions. We therefore conclude that the GAL was immune from suit with regard to the allegations addressed above, and we affirm the district court's dismissal of these claims.

**{31}** There remains one factual issue on which the GAL failed to establish a prima facie showing entitling her to summary judgment. On behalf of Daughter, Father alleged that the GAL colluded with Mother to block Daughter's phone calls to her siblings. If true, such an action would exceed the scope of her appointment, based upon the court orders related to the underlying custody matter that the GAL attached to her motion in this case, none of which allow her to restrict the Children's communication. But the GAL provided no affidavit or other documentation asserting that she did not collude with Mother to inhibit Plaintiff's communication with her siblings. *See Roth v. Thompson*, 113 N.M. 331, 334-35, 825 P.2d 1241, 1244-45 (1992) ("Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits."). We therefore reverse the district court's summary judgment solely with regard to claims involving the GAL's alleged involvement with Mother in blocking Daughter's phone calls to her siblings. As explained above, the GAL is immune from suit for any of Father's claims related to the GAL's alleged failure to report that Mother blocked Daughter's phone calls.

## B.     The Internet Order Was Constitutionally Invalid

**{32}** Father's argument as to the impropriety of the issuance of the Internet Order is twofold. First, he asserts that the district court lacked subject matter jurisdiction to issue the Internet Order. Second, he argues that the Internet Order violated his right to freedom of speech. We review questions of subject matter jurisdiction and constitutional challenges to the district court's Internet Order de novo. *State v. Atcitty*, 2009-NMCA-086, ¶ 13, 146 N.M. 781, 215 P.3d 90 (stating that issues related to subject matter jurisdiction are reviewed de novo); *State v. Druktenis*, 2004-NMCA-032, ¶ 14, 135 N.M. 223, 86 P.3d 1050 (stating that constitutional challenges are reviewed de novo). "Whether a statement is privileged [under the First Amendment] presents a question of law for the court to determine." *Marchiondo v. Brown*, 98 N.M. 394, 400, 649 P.2d 462, 468 (1982). We address each argument in turn.

## 1.     The District Court Had Subject Matter Jurisdiction to Issue the Internet Order

**{33}** Father argues that the district court lacked subject matter jurisdiction to issue the July 1, 2011, Internet Order requiring the removal and banning the republication of his disciplinary complaint against the GAL. Father contends that under the UCCJEA, codified within NMSA 1978, Section 40-10A-202 (2001), the district court lacked subject matter jurisdiction to issue the Internet Order because the entire family had relocated to Canada and because Mother agreed that the district court no longer had jurisdiction over the custody case. Section 40-10A-202(a)(2) provides that a New Mexico court will maintain exclusive continuing jurisdiction until "a court of this state or a court of another state determines that the child, the child's parents[,] and any person acting as a parent do not presently reside in this state."

**{34}** Even if we assume without deciding that the district court lacked jurisdiction over the custody case, it nonetheless retained subject matter jurisdiction to issue the injunction. The UCCJEA only applies to "child-custody determination[s]." Section 40-10A-202(b). "[C]hild-custody determination[s]" are defined by the UCCJEA to "mean[] a judgment, decree or other order of a court providing for legal custody, physical custody or visitation with respect to a child. The term includes a permanent, temporary, initial or modification order. The term does not include an order relating to child support or other monetary obligation of an individual." NMSA 1978, § 40-10A-102(3) (2001).

**{35}** Thus, the UCCJEA exclusively applies to curtail the jurisdictional reach of district courts with relation to "child custody determinations" in expressly specified circumstances. Here, the Internet Order is entirely unrelated to "child custody determinations." The court instead simply issued an injunction that forbade Father's website publications that were in direct violation of prior court orders regarding his behavior in the ancillary custody matter.

**{36}** We dealt with a similar jurisdictional issue in *Ottino v. Ottino*, 2001-NMCA-012, ¶¶ 1-4, 130 N.M. 168, 21 P.3d 37, where a mother and her child sued to enforce post-minority support from the child's adoptive father pursuant to a marriage settlement agreement. The father argued that the district court lacked jurisdiction to hear the claim because under New Mexico law, district courts lack the power to order, on the district court's own authority, post-minority support. *Id.* ¶ 9. The issue in *Ottino* was: "whether the court ha[d] jurisdiction over an agreement of the parties, ancillary to a final divorce decree." *Id.* ¶ 13.

**{37}** In *Ottino*, we explained that "[o]ur district courts are courts of general jurisdiction." *Id.* ¶ 6. As such, "the district court's original jurisdiction arises from our state's constitution. Therefore, absent a constitutional amendment, the court's jurisdiction cannot be limited by the Legislature's enactment of a statute." *Id.* ¶ 14 (citation omitted). This court held that "the district court has the power, arising from its original jurisdiction over matters sounding in contract, to enforce valid agreements for post-minority support." *Id.* Hence, despite the district court's inability to order post-minority child support on its own initiative, the court still retained its constitutional authority to enforce a contract between the parties. Similarly, the Supreme Court has repeatedly stated that to determine whether the district court has

12

jurisdiction, we must ask "whether or not it had power to enter upon the inquiry." *Sundance Mech. & Util. Corp. v. Atlas*, 109 N.M. 683, 687, 789 P.2d 1250, 1254 (1990) (internal quotation marks and citation omitted).

**{38}** At issue in the present case is whether the district court constitutionally has the power to enjoin publication by one of the parties, a matter that is ancillary to the underlying custody dispute. Article VI, Section 13 of the New Mexico Constitution states:

> The district court shall have original jurisdiction in all matters and causes not excepted in this constitution, and such jurisdiction of special cases and proceedings as may be conferred by law, and appellate jurisdiction of all cases originating in inferior courts and tribunals in their respective districts, and supervisory control over the same. *The district courts, or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition and all other writs, remedial or otherwise in the exercise of their jurisdiction*; provided, that no such writs shall issue directed to judges or courts of equal or superior jurisdiction.

(Emphasis added.) Based on the New Mexico Constitution and our precedent, we conclude that the district court had jurisdiction to issue the Internet Order because it is a court of general jurisdiction with the express authority to issue injunctions regarding speech. *See* N.M. Const. art. VI, §§ 3, 23, 26 (stating the matters and causes over which the district court does *not* have original jurisdiction). Simply because a district court is primarily tasked with resolving matters related to domestic relations in a given case does not deprive it of jurisdiction over ancillary issues related to general tort law. *In re Guardianship of Arnall*, 94 N.M. 306, 308, 610 P.2d 193, 195 (1980) (stating that although it is "preferable that guardianships of minors, [and] termination proceedings . . . be brought in children's or family court[,] the failure to do so does not constitute a jurisdictional defect"). We therefore hold that there was no defect in the court's exercise of subject matter jurisdiction.

## 2. The Internet Order Was Not Supported by Proper Findings

**{39}** Father contends that the portion of the district court's Internet Order requiring him to take down his disciplinary complaint against the GAL and restraining him from republishing it violated his right to freedom of speech. Father emphasizes his assertion that the Internet Order constitutes a prior restraint on his speech because it prevents republication of the complaint.

**{40}** We first address Father's contention that the Internet Order was a prior restraint. "The term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis in original) (internal quotation marks and citation omitted). "Prior restraint means only that the

13

government may not enjoin or restrain a particular expression prior to its judicial review, even though the same expression could constitutionally be subject to punishment afterwards." *City of Farmington v. Fawcett*, 114 N.M. 537, 540, 843 P.2d 839, 842 (Ct. App. 1992).

**{41}**  In this case, the district court reviewed the disciplinary complaint against the GAL that Father had already published on his organization's website and then ordered Father to remove the content and restrained Father's republication of the document. We highlight the fact that the court specifically restrained republication of only the disciplinary complaint that it reviewed; no other documents regarding the GAL were addressed in the Internet Order. Because the expression at issue was already subject to judicial review, the Internet Order did not constitute a prior restraint on Father's freedom of expression.

**{42}**  Nonetheless, to the extent that Father argues that the Internet Order violates his right to freedom of speech, there exists no basis within the record to conclude otherwise because the Internet Order fails to meet constitutional standards. The First Amendment to the United States Constitution and Article II, Section 17 of the New Mexico Constitution both protect a person's right to speak, write, and publish freely, with several exceptions. "[T]he protection accorded . . . for freedom of speech and press does not protect every publication, such as obscene, fraudulent or untrue defamatory statements." *State v. Powell*, 114 N.M. 395, 407, 839 P.2d 139, 151 (Ct. App. 1992).[2]  For the district court to issue an order restraining Father's speech, the speech must not be a type of expression that is within the broad category of what is constitutionally protected.

**{43}**  The GAL argued to the district court and again argues on appeal that the speech was defamatory. Yet the district court never determined that the speech was defamatory during the hearing on this issue or in its order. Rather, in the Internet Order compelling removal and enjoining republication of the complaint, the court justified the restraint by stating that it "ha[d] an important and inherent obligation to make parties to this action refrain from harassment and intimidation of other parties and the [GAL and that Father] caused to be published on the internet information designed to harass and intimidate the [GAL] in the exercise of her duties." The court failed to make any other substantive findings about the document itself that was published by Father.

**{44}**  Although the GAL is immune from harassing lawsuits brought by the parties, we lack the constitutional authority to unilaterally extend this policy protecting the GAL in order to separately curtail Father's exercise of free speech on the internet. As explained above, freedom of speech can only be limited where the speech is not protected. Thus, we cannot affirm the district court's Internet Order on its basis that the speech was harassing or intimidating because this alone is insufficient to show that the speech was not protected. *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the

---

[2] We note that this list is not exhaustive.

First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.").

**{45}** The GAL argues that we can conclude that the internet publication constituted defamation based upon evidence the GAL presented in the district court, the findings the court made in its Internet Order, and the findings it made in a second order regarding the GAL's attorney fees. Yet the second order simply recognizes that the disciplinary complaint was "nothing more than a thinly disguised attempt by [Father] to use the disciplinary system as an alternative forum in which to pursue his vendetta against [the GAL]." Neither order addressed or established the existence of the requisite elements of defamation, although it appears that the GAL presented evidence regarding the nature and contents of the publication and Father's motives in publishing the contents.[3]

**{46}** Nevertheless, "a claim of defamation . . . raises questions of fact[,]" *Phillips v. Allstate Ins. Co.*, 93 N.M. 648, 650, 603 P.2d 1105, 1107 (Ct. App. 1979), and we may not weigh the evidence for the first time on appeal in order to affirm on a basis that the district court did not analyze below. *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154. Because the district court did not make factual findings regarding defamation but rather simply restrained Father's publication based on a constitutionally impermissible rationale, we must reverse. We remand for the district court to consider the GAL's arguments and evidence regarding defamation in light of the facts of this case, should Father wish to persist in his publication efforts.

## III.   CONCLUSION

**{47}** For the reasons stated above, we grant Mother's and the GAL's joint motion to dismiss the appeal as to Mother, and we deny the joint motion as to the GAL. We reverse the district court's order dismissing Father's suit against the GAL, but only to the extent that the order dismissed Father's claims involving the GAL's alleged involvement in blocking Daughter's phone calls to her siblings. We affirm the district court's order dismissing Father's suit against the GAL as to all other claims. We also reverse the district court's Internet Order restraining the publication of the disciplinary complaint. We remand this case to the district court for proceedings consistent with this Opinion.

**{48}   IT IS SO ORDERED.**

---

**J. MILES HANISEE, Judge**

---

[3]The Disciplinary Board complaint does not appear in the record before us, but recordings from the hearing and the district court's orders indicate that the district court did examine the complaint.

15

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**CYNTHIA A. FRY, Judge**

**Topic Index for *Kimbrell v. Kimbrell*, Nos. 30,447/31,491**

**APPEAL AND ERROR**
Remand
Standard of Review

**ATTORNEYS**
Disciplinary Action

**CIVIL PROCEDURE**
Failure to State a Claim
Summary Judgment
Mootness
Motion to Dismiss
Standing

**CONSTITUTIONAL LAW**
Freedom of Speech
Mootness
New Mexico Constitution, General
Prior Restraint

**DOMESTIC RELATIONS**
Child Custody
Guardian ad Litem
Parental Rights

**JUDGMENT**
Settlement

**JURISDICTION**
Subject Matter Jurisdiction

**NEGLIGENCE**
Joint and Several Liability

16

**TORTS**
Defamation
Emotional Distress, Infliction of
Immunity
Invasion of Privacy
Prima Facie Tort