## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: _____**

**Filing Date: June 23, 2014**

**Docket No. 34,150**

**AGALELEI KIMBRELL, also known as**
**LILY KIMBRELL, by and through her next**
**friend and parent W. DAVID KIMBRELL,**

      **Plaintiff-Respondent,**

**v.**

**LORRAINE KIMBRELL and**
**KATHRIN KINZER-ELLINGTON,**

      **Defendants-Petitioners.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Barbara J. Vigil and Sarah M. Singleton, District Judges**

Riley, Shane & Keller, P.A.
Courtenay Lee Keller
Tiffany L. Sanchez
Albuquerque, NM

for Petitioner Kathrin Kinzer-Ellington

Michael H. Schwarz
Santa Fe, NM

for Petitioner Lorraine Kimbrell

Gary W. Boyle
Santa Fe, NM

for Respondent

Bristol Family Law, L.L.C.
James E. Bristol, III
Santa Fe, NM

1

Little, Gilman-Tepper, Batley & Leigh, P.A.
Tiffany Oliver Leigh
Albuquerque, NM

L. Helen Bennett, P.C.
Linda Helen Bennett
Albuquerque, NM

for Amicus Curiae the Family Law Section of the State Bar of New Mexico

Peter Henry Klages
Albuquerque, NM

Martinez, Hart & Thompson, P.C.
F. Michael Hart
Albuquerque, NM

for Amicus Curiae Pegasus Legal Services for Children

## OPINION

**CHÁVEZ, Justice.**

**{1}**     Petitioner Kathrin M. Kinzer-Ellington (Kinzer-Ellington) was appointed guardian ad litem pursuant to Rule 1-053.3 NMRA to serve as an arm of the court in determining the best interests of minor children whose parents were involved in a custody dispute. *Kimbrell v. Kimbrell*, 2013-NMCA-070, ¶ 2, 306 P.3d 495, *cert. granted*, 2013-NMCERT-006. As the case grew more and more contentious, W. David Kimbrell (Father) sued both Lorraine Kimbrell (Mother) and the guardian ad litem in tort as next friend of his oldest daughter, Lily Kimbrell (Lily), alleging that their conduct had injured the child. *Id.* ¶ 3. We granted certiorari to determine whether a parent has standing to sue a Rule 1-053.3 guardian ad litem during a pending custody proceeding. Intertwined with this question is whether a Rule 1-053.3 guardian ad litem is absolutely immune from suit arising from the performance of his or her duty—a question we answer first.

**{2}**     We hold that a Rule 1-053.3 guardian ad litem is protected by absolute quasi-judicial immunity from suit arising from the performance of his or her duties unless the guardian ad litem's alleged tortious conduct is clearly and completely outside the scope of his or her appointment. The custody court that appointed the guardian ad litem is the appropriate court to determine whether the guardian ad litem's alleged misconduct arose from acts clearly and completely outside the scope of the appointment and, if so, the custody court should appoint a guardian ad litem, other than a parent, pursuant to Rule 1-017(C) NMRA to represent the child in any necessary litigation. A parent does not have standing to sue a guardian ad litem appointed in a custody proceeding on behalf of the child because (1) the parent has been

2

found to be unable to act in the best interests of the child, and (2) such a lawsuit would create a conflict of interest in the custody case.

**BACKGROUND**

**{3}** The long and contentious history of this domestic relations case is well documented in the Court of Appeals' opinion. *Kimbrell*, 2013-NMCA-070, ¶¶ 2-8. We do not need to repeat all of the details of the disputatious history because the degree of contentiousness is not relevant to the issues before us. Only the details of the appointment of the guardian ad litem and of the lawsuit against the guardian ad litem are relevant.

**{4}** Kinzer-Ellington was appointed guardian ad litem pursuant to NMSA 1978, Section 40-4-8 (1993) to assist the parties and the district court in determining the best interests of the Kimbrells' four minor children. Soon after Kinzer-Ellington issued her first report and recommendations, the district court entered a stipulated order regarding child custody and periods of responsibility that adopted most of Kinzer-Ellington's recommendations and discharged her from further service. However, Kinzer-Ellington was reappointed pursuant to Rule 1-053.3 after problems continued between Father and Mother. The district court specified her role and made clear that she served as an arm of the court pursuant to Rule 1-053.3.

**{5}** Following Kinzer-Ellington's reappointment, Father refused to permit her to speak with Lily; insisted on being present during meetings between Kinzer-Ellington and the children or to have those meetings recorded; refused to execute authorizations for the release of information regarding the children; filed five different motions to have Kinzer-Ellington removed as guardian ad litem, each of which were denied; filed two disciplinary complaints against Kinzer-Ellington, both of which were dismissed for lack of merit; sued Kinzer-Ellington and others in federal court; and also sued Kinzer-Ellington and Mother in state court, alleging tortious conduct. After one of Father's motions to remove Kinzer-Ellington as the guardian ad litem, the district court, apparently exasperated, entered the following findings in denying the motion:

> 3. David Kimbrell's January 8, 2010 Motion to Replace Guardian ad Litem continues to try to attack the *guardian ad litem's* ability to provide independent representation of the parties' children.
>
> . . .
>
> 5. The *guardian ad litem* has maintained an objective view of this case and remains objective in exercising her role in this case.
>
> 6. David Kimbrell inappropriately views the *guardian ad litem* as an opponent in this matter.

3

7.	David Kimbrell's continuing attacks on the *guardian ad litem* are becoming problematic to the administration of justice.

8.	David Kimbrell's continuing attacks on the *guardian ad litem* have become unfair and abusive.

**{6}**	The issue before us arises from the state court tort litigation. In that case, Father sued Mother as next friend and parent of Lily, and later amended his complaint to include Kinzer-Ellington as a co-defendant. Father alleged that Kinzer-Ellington breached her fiduciary duty to Lily; invaded Lily's privacy; committed prima facie tort; and caused intentional infliction of emotional distress by, among other things, blocking contact between Lily and her siblings.

**{7}**	Both Kinzer-Ellington and Mother filed motions to dismiss the tort action. The district court took judicial notice of the voluminous family court file and the fact that Kinzer-Ellington was appointed guardian ad litem under Rule 1-053.3 "due to the inability of either parent to remain objective and agree on what is in the best interests of the child." The district court also found that Father "does not possess the necessary objectivity to make decisions concerning the best interests of the child including whether a tort suit should be brought on behalf of the child against the child's mother and/or the guardian ad litem." The district court concluded that the best interests of the child and the appointment of the guardian ad litem pursuant to Section 40-4-8 and Rule 1-053.3 "deprive the child's parents of standing to bring a tort suit on behalf of the child against the other parent and/or the guardian ad litem." The district court noted that the remedy for improper conduct on the part of the guardian ad litem is removal in the underlying domestic relations proceeding. The district court dismissed Father's tort case with prejudice.

**{8}**	On appeal, the Court of Appeals reversed the district court, holding that "[u]nder our law as it exists today, parents retain standing to sue their child's guardian on behalf of their child, subject to the guardian's limited immunity as an arm of the court. We thus conclude that Father has standing to assert the tort cause of action in this case." *Kimbrell*, 2013-NMCA-070, ¶ 19. With respect to immunity, the Court of Appeals acknowledged that a guardian ad litem who acts as an arm of the court enjoys absolute immunity for conduct within the scope of the appointment. *Id.* ¶ 21. However, pursuant to *Collins ex rel. Collins v. Tabet*, 1991-NMSC-013, ¶ 10, 111 N.M. 391, 806 P.2d 40, the Court of Appeals employed a functional approach to each of Father's contentions to determine whether Kinzer-Ellington allegedly exceeded the scope of her appointment, and held that with one exception—alleged interference with communications between siblings—the alleged conduct fell within the scope of Kinzer-Ellington's appointment, entitling her to immunity. *Kimbrell*, 2013-NMCA-070, ¶¶ 21, 31. This Court granted Kinzer-Ellington's petition for writ of certiorari.[1] We

---

[1]Lily reached the age of majority before we granted certiorari. Lily argued that the issue regarding her parents' standing to sue on her behalf is now moot. Regardless, we

now reverse the Court of Appeals and affirm the district court's summary judgment in favor of Kinzer-Ellington. We first discuss the issue of immunity and then the issue of standing.

**STANDARD OF REVIEW**

**{9}** The Court of Appeals reviewed the district court's order as an order granting summary judgment. *Id.* ¶ 10. The Court of Appeals determined that Kinzer-Ellington's motion to dismiss Father's tort lawsuit for lack of standing was converted into a motion for summary judgment because the district court took judicial notice of matters in the underlying divorce and custody proceedings and considered pleadings from those proceedings attached to Kinzer-Ellington's motion to dismiss. *Id.* ¶ 9. Orders granting summary judgment are reviewed de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. Whether a party has standing to sue is a question of law, which is also reviewed de novo. *See San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 8, 150 N.M. 64, 257 P.3d 884.

**DISCUSSION**

**{10}** In 2006, this Court adopted a rule to define the duties of a guardian ad litem to serve in custody disputes. Rule 1-053.3 (adopted 2006, amended 2007). A Rule 1-053.3 guardian ad litem is a " 'best interests attorney' " who provides independent services without being bound by the child's or another party's directives or objectives and who must make findings and recommendations to the court regarding the best interests of the child. Rule 1-053.3(C).

**A Rule 1-053.3 guardian ad litem has absolute quasi-judicial immunity from suit arising from the performance of his or her duties**

**{11}** In *Collins*, we held that a guardian ad litem acting as an arm of the "court is absolutely immune from liability for his or her actions taken [within the scope of] the appointment." 1991-NMSC-013, ¶ 14. The rationale for granting absolute immunity is to prevent the guardian ad litem's work from being compromised by the threat of liability, which in turn could impair the judge's own performance. *Id.* ¶ 26.

**{12}** In *Collins*, one example we gave of a guardian ad litem entitled to absolute immunity was a guardian ad litem whose responsibility was to conduct a factual investigation and make recommendations to the court regarding the placement of a child consistent with the best interests of the child. *Id.* ¶ 22 (citing *Ward v. San Diego Cnty. Dep't of Soc. Servs.*, 691

believe that the issues in this case are capable of repetition and are matters of substantial public interest. We therefore proceed to decide the merits of this case. *See Gunaji v. Macias*, 2001-NMSC-028, ¶ 10, 130 N.M. 734, 31 P.3d 1008 (holding that "this Court may review moot cases that present issues of substantial public interest or which are capable of repetition yet evade review").

5

F. Supp. 238, 240 (S.D. Cal. 1988)). In *Ward*, the guardian ad litem was given access to all of the child's records, and was notified of and authorized to attend all conferences and hearings regarding the child in order to carry out her responsibilities. 691 F. Supp. at 240. When the father sued the guardian ad litem, alleging that she acted outside the scope of her appointment, the *Ward* court granted summary judgment to the guardian ad litem, holding that she had absolute quasi-judicial immunity from liability. *Id.* at 241. The rationale of the *Ward* court was three-fold. *See id.* at 240-41. First, the guardian ad litem was acting as an arm of the court. *Id.* at 240. Second, the threat of civil liability could impair the guardian ad litem's ability to independently investigate and report the facts to the court, thereby obstructing the pathway to ascertaining the truth and impairing the judge's ability to perform his or her judicial duties. *Id.* Third, procedural safeguards—the guardian ad litem serves at the discretion of the court, the court is not bound by the guardian's recommendations, and the parents may appeal—are available to protect against misconduct, making the threat of civil litigation unnecessary. *Id.* at 240-41. The guardian ad litem in *Ward* would not have enjoyed absolute quasi-judicial immunity had her actions been clearly and completely outside the scope of her appointment. *Id.* at 240 n.1.

**{13}** We find the analysis in *Ward* persuasive with respect to guardians ad litem who are appointed pursuant to Section 40-4-8 and Rule 1-053.3. Like the guardian ad litem in *Ward*, a Rule 1-053.3 guardian ad litem "serves as an arm of the court and assists the court in discharging its duty to adjudicate the child's best interests," Rule 1-053.3(A), and "shall provide independent services to protect the child's best interests without being bound by the child's or either party's directive or objectives and who shall make findings and recommendations." Rule 1-053.3(C). The guardian ad litem is authorized to interview the parents, the children outside the presence of the parents, the child's therapists, and other witnesses at the guardian ad litem's discretion, and is also given access to relevant records. Rule 1-053.3(F)(1).

**{14}** The function of Rule 1-053.3 guardians ad litem is without question to act as an arm of the court, and they are therefore entitled to absolute quasi-judicial immunity from liability for the performance of their duties. In addition to concerns about intimidation tactics or the fear of being sued by a disgruntled parent, there are procedural safeguards available in New Mexico that make the threat of litigation an unnecessary check on the conduct of a Rule 1-053.3 guardian ad litem, such as the guardian ad litem's service at the discretion of the court, Rule 1-053.3(A) (a court may appoint a guardian ad litem); the court's ability to limit the role of the guardian ad litem, Rule 1-053.3(B); and the parties' ability to object to the recommendations of the guardian ad litem, Rule 1-053.3(G)(2).

**{15}** In addition, like the *Ward* court, we conclude that absolute quasi-judicial immunity does not protect a Rule 1-053.3 guardian ad litem who acts clearly and completely outside the scope of his or her appointment. What actions may constitute a clear and complete departure from the scope of appointment are too difficult to predict. An obvious example discussed during oral argument arises when the guardian ad litem negligently operates a motor vehicle, legally causing injury to a child. However, where the conduct in question is

6

related to communications between the guardian ad litem and the children, parents, therapists, other witnesses, or the gathering of information for the purpose of making recommendations to the court, then the conduct is not clearly and completely outside the scope of the appointment and the guardian ad litem is protected by absolute immunity.

**{16}** The Court of Appeals employed the functional analysis announced by the *Collins* court to determine whether each alleged act of misconduct by Kinzer-Ellington was done within the scope of her appointment. *See Kimbrell*, 2013-NMCA-070, ¶¶ 21, 28. In a functional analysis, "a limited factual inquiry is necessary to determine the nature of [the guardian ad litem's] appointment and the extent to which he [or she] functioned within the scope of that appointment." *Collins*, 1991-NMSC-013, ¶ 42.

**{17}** The *Collins* court applied a functional analysis because it was not clear from the record whether the guardian ad litem was appointed as an arm of the court or as a conflict lawyer/guardian ad litem to evaluate a settlement involving a minor. *Id.* ¶¶ 27, 29, 44. When a guardian ad litem is appointed pursuant to Rule 1-053.3, it is very clear that the guardian ad litem is an arm of the court. The appointing court is in the best position to determine whether the guardian ad litem has clearly and completely acted outside the scope of his or her appointment. Therefore, a parent concerned about potential misconduct by the guardian ad litem must bring the matter to the attention of the appointing court, which is also the custody court. The appointing court shall exercise discretion in conducting whatever hearing it deems necessary to decide whether sufficient evidence exists to support a good faith allegation that the guardian ad litem exceeded the scope of his or her appointment. If such evidence does exist, the court may take whatever action it deems necessary regarding the guardian ad litem by, for example, limiting his or her duties or removing him or her from service. In addition, if the court finds evidence sufficient to support a good faith basis that the guardian ad litem clearly and completely acted outside the scope of his or her appointment and may have caused injury to a child, the court shall appoint a different guardian ad litem to act as an attorney for the child pursuant to Rule 1-017(C) to pursue whatever action he or she deems necessary. Although this approach deviates from the approach taken by the *Collins* court, the approach we announce today is consistent with the best interests of children involved in custody disputes and with the procedures and confidentiality requirements of Rule 1-053.3.

**A parent in a custody dispute does not have standing to sue, on behalf of a child, a Rule 1-053.3 guardian ad litem who does not have absolute immunity**

**{18}** Our resolution of the immunity question leaves the potential for a Rule 1-053.3 guardian ad litem to be sued. The question that remains is whether a parent in a pending custody case may sue the guardian ad litem on behalf of a child. We hold that a parent does not have standing to bring such a lawsuit because the custody court has already determined that the parent is incapable of acting in the best interests of the child. In addition, to allow the parent to sue the guardian ad litem creates a conflict of interest and the potential for interference with the administration of justice in both the custody proceeding and the tort

action. Even in the obvious example where a guardian ad litem negligently operates a motor vehicle causing injury to the child, a parent who is allowed to sue on behalf of the child may not act in the best interest of the child regarding settlements or other important strategies just to spite or intimidate the guardian ad litem. For this reason, we have already indicated that in an appropriate case, the custody court should appoint a guardian ad litem for the child under Rule 1-017 to pursue any necessary litigation.

**{19}** Our holding is consistent with how other jurisdictions have approached the issue. *See Bluntt v. O'Connor*, 291 A.D.2d 106, 113, 114 (N.Y. App. Div. 2002) (holding that a mother lacked standing to bring a claim either on behalf of a child or individually against the guardian ad litem because such a suit would interfere with the guardian ad litem appointment and create a conflict of interest); *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 380 (Mo. Ct. App. 1993) (holding that appointment of a guardian ad litem in a custody case supersedes a parent's natural guardianship in areas of a custody disputes as long as the appointment lasts). The *Bird* court set forth a detailed analysis of the standing issue:

> the underlying suit is an independent tort action brought by Father on behalf of the children seeking to obtain injunctive relief and money damages. Nevertheless, the factual allegations of the petition and the nature of the relief sought would appear to fall squarely within the areas of interest in the Juvenile Court proceeding in which Guardian was appointed. . . . Further, although Father does not expressly seek Mr. Bird's removal as guardian ad litem as part of the relief requested in the underlying suit, the mere assertion of a claim for money damages against him by his clients could very well accomplish the same result by posing an inherent conflict of interest. Removal of a guardian ad litem, however, is a matter vested in the sound discretion of the appointing court, in this case the Juvenile Court for the City of St. Louis. . . . *Would suits and countersuits brought in the name of the children become the new weapon of choice in the arsenal of estranged couples?* Thus, at least with respect to the claims asserted against Mother and Guardian, there is substantial reason to question Father's standing to maintain the underlying suit.

*Bird*, 864 S.W.2d at 380-81 (emphasis added) (footnote omitted) (internal citations omitted). The procedure we have outlined safeguards the best interests of the child, while preserving and protecting the important role of a Rule 1-053.3 guardian ad litem.

**The guardian ad litem in this case is absolutely immune from suit for the alleged tortious conduct because her conduct was not clearly and completely outside the scope of her appointment**

**{20}** The Court of Appeals "reverse[d] the district court's summary judgment solely with regard to claims involving the [guardian ad litem]'s alleged involvement with Mother in blocking [Lily]'s phone calls to her siblings." *Kimbrell*, 2013-NMCA-070, ¶ 31. We have

already held that the custody court is the appropriate court to determine whether the guardian ad litem's alleged misconduct arose from acts clearly and completely outside the scope of her appointment.

**{21}** However, because of the protracted nature of this litigation and what we consider to be the adequacy of the record before us, we conclude that even if Kinzer-Ellington, together with Mother, blocked calls between siblings, such actions are not clearly and completely outside the scope of her appointment. Guardians ad litem have the responsibility to interview a number of different participants in custody battles with the goal of ascertaining the truth. In this case, Kinzer-Ellington was ordered to interview the children outside the presence of the parents and the attorneys. In such a contentious case, particularly given Father's efforts to have the children make false reports of abuse against Mother, Kinzer-Ellington had the discretion to control the communications between the children until she completed her investigation. As a result, Kinzer-Ellington is also absolutely immune from being sued for the alleged collusion with Mother in controlling the communications between siblings in this case.

**CONCLUSION**

**{22}** The guardian ad litem cannot be sued for the alleged misconduct because her actions cannot be said to be clearly and completely outside the scope of her appointment. Therefore, absolute quasi-judicial immunity applies to the guardian ad litem in this case. The Court of Appeals is reversed and the district court's summary judgment in favor of Kinzer-Ellington is affirmed.

**{23}    IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**CAMILLE MARTINEZ OLGUIN, Judge**
**Sitting by designation**

9