The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **January 29, 2024**

**No. A-1-CA-40083**

**JARROD LOWREY,**

    Plaintiff-Appellant,

v.

**SINFY CASTILLO and JAVIER ARGUETA,**

    Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nancy J. Franchini, District Court Judge**

Jarrod Lowrey
Rio Rancho, NM

Pro Se Appellant

Jackson Loman Stanford Downey & Stevens-Block, P.C.
Eric Loman
Albuquerque, NM

for Appellees

**OPINION**

**WRAY, Judge.**

{1} Plaintiff Jarrod Lowrey appeals pro se the district court's dismissal of the complaint brought against Defendants Sinfy Castillo, a probation officer, and Javier Argueta, Defendant Castillo's supervisor (collectively, Defendants), both employed by the Bernalillo County Metropolitan Court (the Metro court). The complaint asserted unspecified causes of action relating to Defendants' alleged misconduct in the supervision of a participant in a domestic violence early intervention program (EIP Participant), which is a Metro court treatment program. Defendants moved to dismiss Plaintiff's complaint based on Rule 1-012(B)(6) NMRA. The district court granted the motion and determined in part that Defendants were protected by quasi-judicial immunity. We conclude that the alleged misconduct arose from Defendants' activities that were performed as an arm of the Metro court and their services supervising the Metro court treatment program participants were integral to the judicial process; quasi-judicial immunity permits Defendants to perform that judicial function without fear of civil liability and sufficient procedural safeguards protect against potential misconduct; and Defendants acted within the scope of their quasi-judicial function. We therefore affirm.

**BACKGROUND**

{2}     Plaintiff's complaint asserts the following. EIP Participant had been arrested for twice violating a domestic violence restraining order and agreed to participate in a preprosecution diversionary domestic violence early intervention program (the EIP) run by the Metro court. As part of the EIP, EIP Participant entered into two EIP agreements (EIP Agreements), which contemplated supervision by a probation officer and imposed a series of conditions. The conditions required EIP Participant to (1) report to the probation officer weekly or "as often as the probation officer may require"; (2) notify the probation officer of any change in address, employment, or school status; (3) inform the probation officer of any missed counseling sessions or treatment and explain any absences; (4) submit to drug and alcohol testing upon the probation officer's request; and (5) be truthful with the probation officer, the EIP judge, and any counselor. Defendant Castillo was the probation officer who supervised EIP Participant's compliance with the EIP Agreements and the Metro court's conditions of release, and Defendant Argueta was Defendant Castillo's supervisor.

{3}     Plaintiff's primary allegation is that Defendants' failure to supervise EIP Participant put Plaintiff, his minor son, other children, and the community at risk. EIP Participant was living with Plaintiff's ex-wife and her children, including Plaintiff's son. Concerned that EIP Participant was using drugs in the home while

2

living with the children, Plaintiff investigated EIP Participant and discovered that he was subject to the EIP Agreements and Defendants' supervision. Plaintiff initially contacted Defendants to report violations of the EIP Agreements, which included the failure to notify the probation officer of a change of address, drug use, and contact with an assault victim. Specifically, Plaintiff reached out to Defendant Castillo "to see if she could assist . . . in removing [EIP Participant] from [Plaintiff's] son's house." Defendant Castillo stated that "there was nothing she could do to get [EIP Participant] away from [Plaintiff's] son" but did instruct EIP Participant to submit to a drug test, filed an EIP probation violation report, and participated in the EIP probation violation hearing.

{4}     Plaintiff subsequently reported to Defendants additional violations by EIP Participant, which included arrests, failure to appear in court, failure to obtain or continue employment, perjury, and failure to submit to drug tests. Defendants requested that Plaintiff prepare an affidavit detailing the information, and Plaintiff complied. Thereafter, Defendants filed additional EIP probation violation reports and affidavits, participated in the hearings, recommended that the Metro court impose community service as sanctions, and required EIP Participant to submit to additional drug tests. The Metro court ordered EIP Participant to perform community service. Nevertheless, Plaintiff had an additional meeting with Defendants to

3

articulate his continued frustration with their supervision and his view that Defendants had misrepresented and minimized his reports to the Metro court judge.

{5} In Plaintiff's words, Defendants "dismissed" Plaintiff's concerns. Thereafter, Plaintiff filed a civil complaint against Defendants in district court and alleged that Defendant Castillo failed to (1) check more frequently on EIP Participant's "living situation" and criminal records; (2) require more frequent drug testing; and (3) report accurately to the Metro court the information that Plaintiff had provided about EIP Participant's potential probation violations. Plaintiff alleged that Defendants created a dangerous situation for the community, himself, his son, and other children by enabling EIP Participant's "drug problems to persist" and "completely fail[ing] to rehabilitate" him. Defendants moved to dismiss the complaint and argued, in relevant part, that Defendants were an arm of the court and entitled to absolute immunity from civil suit. The district court granted Defendants' motion and dismissed the complaint. Plaintiff appeals.

**DISCUSSION**

{6} Plaintiff first argues that the district court did not properly apply the "functional approach" to determine whether Defendants were entitled to quasi-judicial immunity and as a result, improperly dismissed the complaint, which leaves no redress for the constitutional harm that Defendants' alleged misconduct has caused to Plaintiff, Plaintiff's son, other children, and the community. Plaintiff's

second argument—that immunity results in the lack of redress of harm—challenges the long-standing policy-based decision by our courts to afford immunity to some actors under some circumstances. *See Collins ex rel. Collins v. Tabet*, 1991-NMSC-013, ¶¶ 18-19, 26, 111 N.M. 391, 806 P.2d 40 (collecting immunity cases and applying immunity principles to guardians ad litem), *abrogated on other grounds by State v. Mares*, ___-NMSC-___, ¶ 32, ___ P.3d ___ (S-1-SC-38948, Dec. 22, 2023). Specifically, our Supreme Court has afforded absolute immunity to individuals acting "within the scope of the appointment" as "an arm of the court." *Kimbrell v. Kimbrell*, 2014-NMSC-027, ¶ 8, 331 P.3d 915 (internal quotation marks and citation omitted); *see id.* ¶ 11 (stating the rule set forth in *Collins*). As a result, we do not reevaluate the legitimacy of the immunity doctrines but instead review the district court's application of immunity law to the present case. *See Kimbrell*, 2014-NMSC-027, ¶¶ 11-17 (adopting a framework for the applicability of immunity under the circumstances). We "review questions of immunity de novo." *Hunnicutt v. Sewell*, 2009-NMCA-121, ¶ 8, 147 N.M. 272, 219 P.3d 529. Where, as here, the question is whether the district court erred by granting a Rule 1-012(B)(6) motion to dismiss, we take "the well-pleaded facts alleged in the complaint as true and test the legal sufficiency of the claims." *Id.* (internal quotation marks and citation omitted).

{7}     Quasi-judicial immunity refers to the extension to quasi-judicial officers of the well-settled law that a judge acting within their jurisdiction is entitled to absolute

immunity. *Collins*, 1991-NMSC-013, ¶¶ 17, 24. Absolute judicial immunity is afforded in order to protect judges "from harassment, intimidation, or other interference with their ability to engage in impartial decision-making." *Id.* ¶ 18. It preserves the "autonomy and integrity of the judiciary" and is extended to quasi-judicial offers "so that persons who are integral to the judicial process are able to perform their functions without the intimidating effect of potential lawsuits." *Id.* ¶ 24 (internal quotation marks and citation omitted); *Hunnicutt*, 2009-NMCA-121, ¶ 9. Because we conclude that quasi-judicial immunity applies to a probation officer supervising participation in the Metro court EIP and Defendants did not act "clearly and completely outside the scope" of their appointment as an arm of the court, we agree with the district court that Defendants are entitled to quasi-judicial immunity. *Cf. Kimbrell*, 2014-NMSC-027, ¶¶ 2, 22 (concluding that quasi-judicial immunity applies to certain guardians ad litem and considering whether the alleged misconduct was "clearly and completely outside the scope" of their appointment).

**I.      Quasi-Judicial Immunity Applies to a Probation Officer Supervising Participation in the Metro Court EIP**

{8}      Quasi-judicial immunity is applicable if (1) the individual is acting as an arm of the court and the acts are integral to the judicial process; (2) the threat of civil liability could impair the independence of the individual and thereby the ability of the court to perform its judicial duties; and (3) procedural safeguards exist to "protect against misconduct." *Id.* ¶¶ 12-13. We first evaluate whether Defendants acted as an

6

arm of the court in their capacity as probation officers monitoring Metro court EIP participants and whether those acts were integral to the judicial process. We then turn to consider together the threat of civil liability and the existence of other procedural safeguards.

**A.  A Probation Officer Supervising a Participant in the Metro Court EIP Serves as an Arm of the Court and Performs a Function That Is Integral to the Judicial Process**

{9}  Quasi-judicial immunity protects individuals who act "as an actual functionary or arm of the court, not only in status or denomination but in reality" and are an "integral part[] of the judicial process." *Collins*, 1991-NMSC-013, ¶¶ 16, 19 (internal quotation marks and citations omitted). When the extent to which an individual acts as an arm of the court is not clear, we apply the "functional approach," or analysis, to decide whether the acts, as alleged in the complaint, were judicial functions. *See id.* ¶ 42 (stating that "a limited factual inquiry is necessary to determine the nature of [the individual]'s appointment"); *Kimbrell*, 2014-NMSC-027, ¶ 17 (noting the necessity of the functional approach in *Collins* but declining to apply that analysis because under the governing rule in *Kimbrell*, it was "very clear that the guardian ad litem [wa]s an arm of the court"). Plaintiff argues, Defendants do not dispute, and we agree that the functional approach applies to determine whether Defendants are immune. We therefore apply the functional analysis to

7

determine whether Defendants acted as an arm of the court and then consider whether those functions are integral to the judicial process.

{10} To apply the functional analysis, we examine the Defendants' role in the process that gave rise to Plaintiff's allegations. *See Hunnicutt*, 2009-NMCA-121, ¶¶ 9-13. Plaintiff challenges Defendants' conduct in relation to the Metro court treatment program. The Metro court accepted EIP Participant into the program subject to conditions that were set forth in the EIP Agreements and reiterated in part in the acceptance letter signed by the Metro court EIP judge. The EIP Agreements, on the Metro court letterhead, required EIP Participant's performance of the required conditions to be supervised by a probation officer, including reporting to the probation officer; notifying the probation officer of changes in EIP Participant's address, employment, school status, or missed counseling sessions; submitting to drug and alcohol tests at the probation officer's request; and being truthful with the probation officer and the Metro court EIP judge. The EIP Agreements incorporated EIP Participant's court-imposed conditions of release into the EIP Agreements' conditions, and Defendant Castillo, as a probation officer, was trusted with monitoring EIP Participant's compliance with those conditions. EIP Participant agreed that violation of the EIP Agreements could "result in sanctions, including a warrant being issued . . ., jail time being imposed, and/or termination from the program." As Plaintiff concedes, Defendants' actions were "clearly defined" by the

8

conditions in the EIP Agreements. As a result, Defendants' role was to perform judicial functions—to implement the Metro court treatment program. *See id.* ¶ 10 (concluding where a court has a responsibility to perform the function, that function is "judicial and not administrative").

{11}    We further conclude that Defendants' judicial functions were integral to the judicial process. Plaintiff argues that Defendants' function of supervising EIP Participant was purely administrative because Defendants performed "general routine investigative acts" that are not integral to the judicial process. Because Plaintiff characterizes these functions as "operational in nature" and "subservient to departmental directives," Plaintiff argues that immunity should not be extended to Defendants. After accepting EIP Participant, however, the Metro court was reliant on Defendants' supervisory actions to evaluate EIP Participant's compliance with the conditions and continued participation in the Metro court EIP. To that end, Defendants presented reports to the Metro court based on EIP Participant's alleged violations of the conditions and recommended that the Metro court impose sixteen hours of community service. Defendants supervised EIP Participant's compliance with the conditions of the EIP Agreements, and thereby played an integral role in the Metro court's performance of its function to evaluate whether EIP Participant should continue to participate in the Metro court EIP.

**B.** **The Threat of Litigation Could Impair the Performance of the Judicial Function and Existing Procedures Safeguard Against Probation Officer Misconduct While Supervising Participation in the Metro Court EIP**

{12}    We turn next to the impact of the threat of civil liability and the existing procedural safeguards to protect against misconduct. *Kimbrell*, 2014-NMSC-027, ¶¶ 12-13. In *Kimbrell*, our Supreme Court recognized that the threat of "liability could impair [a] guardian ad litem's ability to independently investigate and report the facts to the court, thereby obstructing the pathway to ascertaining the truth and impairing the judge's ability to perform [their] judicial duties." *Id.* As we have described, the EIP Agreements similarly designated a probation officer to investigate and report to the Metro court the facts related to EIP Participant's compliance with the EIP conditions. Independent objective discharge of this function by probation officers is essential to provide the court with the information necessary to implement the Metro court EIP. If a probation officer is concerned about civil liability—from either a program participant or a member of the community—the probation officer's ability to act independently and the court's ability to perform its duties could be impaired. *Cf. Collins*, 1991-NMSC-013, ¶ 26 (explaining that "[t]he objectivity of a guardian's investigation and recommendation might be compromised by the threat of liability; and . . . this could impair the judge's own ability to perform [their] judicial duties in approving the settlement"). We therefore conclude that the threat

10

of civil liability would impair the Metro court's ability to perform its judicial duties in relation to the EIP. *Cf. Kimbrell*, 2014-NMSC-027, ¶¶ 12-13.

{13}     Procedural safeguards further exist to protect against the misconduct alleged, which makes "the threat of civil litigation unnecessary." *Id.* To evaluate the availability of procedural safeguards to prevent misconduct by a probation officer performing their duties in this context, we first observe that misconduct can involve either inaccurately reporting information to the detriment of the participant or *failing to investigate and report* accurate information to the detriment of third parties. Plaintiff alleges only the latter type of misconduct and argues that Defendants' failed to report or investigate violations, which in turn placed Plaintiff, Plaintiff's son, other children, and the community in danger. In the context of inaction that allegedly places third parties at risk, adequate procedural safeguards exist because other law enforcement agencies, including the police and child protective services, are charged with keeping the community safe. *See* NMSA 1978, § 29-1-1 (1979) (describing the duty of peace officers to investigate all criminal violations brought to their attention or of which they are aware, and to initiate a criminal prosecution "if the circumstances are such as to indicate to a reasonably prudent person that such action should be taken"); NMSA 1978, § 32A-4-3 (2021) (stating the duty of "[e]very person," including law enforcement officers, to report child abuse and child neglect, as well as the responsibility of local law enforcement agencies to investigate such

11

abuse or neglect); NMSA 1978, § 32A-4-4(A) (2019, amended 2023) (requiring child protective services to investigate reports alleging neglect or abuse).

{14} For these reasons, when claims of civil liability are premised on allegations that probation officers failed to report or investigate violations by a participant in the Metro court's EIP program, we conclude that the threat of civil liability could impair the judge's ability to perform judicial duties and that procedural safeguards exist to otherwise protect against the type of misconduct alleged in the present case. Taking this conclusion together with our holding that probation officers who supervise participants in the Metro court EIP program function as an arm of the court and that function is integral to the judicial process, we hold that quasi-judicial immunity generally applies in this context.

## II. Defendants Did Not Act Outside the Scope of the Probation Officer's Function in Supervising EIP Participant

{15} Even when quasi-judicial immunity applies, however, an individual may not be entitled to its protection if the alleged misconduct was "clearly and completely outside the scope" of the individual's function as an arm of the court. *Kimbrell*, 2014-NMSC-027, ¶¶ 1-2. Plaintiff maintains that Defendants could not be immune for actions taken in bad faith—for example, misrepresenting Plaintiff's reports about EIP Participant's behavior—because such acts are not within the judicial function. Importantly, however, Plaintiff concedes that Defendants' actions were within the scope of the duties assigned to them by the Metro court, complaining only about *how*

12

Defendants performed those duties. But allegations about the improper performance of duties have no bearing on the scope of duties inquiry. *See Hunnicutt*, 2009-NMCA-121, ¶ 13 (declining to "examine the allegations of improper or illegal conduct"). As a result, Plaintiff has not persuaded us that Defendants' actions were "clearly and completely outside the scope of" a probation officer's judicial function of supervising EIP Participant.

**CONCLUSION**

{16}    For these reasons, we hold that Defendants are entitled to quasi-judicial immunity, and we affirm the district court.

{17}    **IT IS SO ORDERED.**


_____

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**


_____

**ZACHARY A. IVES, Judge**


_____

**JANE B. YOHALEM, Judge**