The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: April 16, 2024

**No. A-1-CA-41120**

**BRAD BOLEN a/k/a BRADLEY CARROL BOLEN,**

      Plaintiff-Appellee,

v.

**NEW MEXICO RACING COMMISSION; and FABIAN LOPEZ, Records Custodian for New Mexico Racing Commission,**

      Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Joshua A. Allison, District Court Judge**

Western Agriculture, Resource and
Business Advocates, LLP
A. Blair Dunn
Jared R. Vander Dussen
Albuquerque, NM

for Appellee

Jackson Loman Stanford Downey
& Stevens-Block, P.C.
Eric Loman
Albuquerque, NM

for Appellants

**OPINION**

**BOGARDUS, Judge.**

{1}     This case requires us to interpret, for the first time, whether judicial immunity is a defense available to a "public body" under the New Mexico Civil Rights Act (CRA), NMSA 1978, §§ 41-4A-1 to -13 (2021). Defendant, the New Mexico Racing Commission (NMRC)[1] filed a motion for summary judgment in the district court, which argued, in relevant part, that NMRC has absolute quasi-judicial immunity from suit for its decision to initiate and prosecute an administrative disciplinary proceeding against Plaintiff Brad Bolen. The district court denied NMRC's motion for summary judgment, concluding that because judicial immunity applies only to individuals, NMRC is not immune from suit under the CRA. On appeal, NMRC argues that the district court erred in denying its motion because judicial immunity is expressly preserved under Section 41-4A-10 of the CRA and, under the facts of this case, it is entitled to quasi-judicial immunity.[2] We agree with NMRC that the

---

[1] NMRC is an administrative agency created by the Horse Racing Act to regulate the sport and industry of horse racing. *See* NMSA 1978, §§ 60-1A-1 to -30 (2007, as amended through 2023). Pursuant to the Horse Racing Act, persons engaged in horse racing may only do so if licensed by NMRC. *See* 16.47.1.8(A) NMAC (stating "[a] person as defined by 15.2.1.7 NMAC shall not participate in pari-mutuel racing under the jurisdiction of the commission or be employed by an association who is a gaming operator, without a valid license issued by the commission").

[2] Although NMRC raised several issues in its application for interlocutory appeal, and we granted the application as to *all* issues, NMRC only briefed the single issue that was raised in its separate petition for writ of error to this Court—namely,

district court erred and therefore reverse and remand with instructions to grant summary judgment in favor of NMRC.

**BACKGROUND**

{2}     This case arises from a dispute between Bolen, licensed by NMRC as a horse trainer, and a chief steward over the reinstatement of the license of an assistant trainer that Bolen wished to employ. After learning that his assistant trainer's license would not be reinstated after a lengthy period of suspension, Bolen contacted the chief steward to advocate for the reinstatement of the license. It is undisputed that Bolen was critical of the chief steward's performance during their dispute. Based on Bolen's behavior, NMRC initiated an administrative disciplinary proceeding against him for violating 16.47.1.8(L)(1)(i) NMAC.[3]

{3}     The board of stewards held a hearing on the matter and ruled that Bolen had violated 16.47.1.8(L)(1)(i) NMAC and issued a $500 fine, which was immediately waived and would be completely abated should Plaintiff have no violations for a

---

whether the district court erred in denying NMRC's motion for summary judgment based on its conclusion that NMRC is not immune from suit because quasi-judicial immunity is a defense only available to individuals, not public bodies. Because we conclude that NMRC is entitled to quasi-judicial immunity in this case, supplemental briefing on the two other claims raised by NMRC in its application, which are also tied to the CRA, is unnecessary as Plaintiff's CRA claims against NMRC are barred.

[3]The New Mexico Administrative Code 16.47.1.8(L)(1)(i) authorizes NMRC to take disciplinary measures where a licensee's "conduct or reputation may adversely reflect on the honesty and integrity of horse racing or interfere with the orderly conduct of a race meeting."

period of one year. Bolen appealed to the board of stewards, seeking a review before an independent hearing officer. Contemporaneously, Bolen filed the underlying complaint in district court to establish NMRC's liability and recover damages and equitable relief under Section 41-4A-3 of the CRA alleging, in relevant part,[4] that NMRC retaliated against him by initiating "a vindictive prosecution" against him, violating his rights under Article II, Sections 17 and 18 of the New Mexico Constitution. The administrative hearing was scheduled to take place but, before the hearing, Bolen withdrew his appeal choosing only to pursue litigation.

{4} NMRC subsequently filed a motion for summary judgment. Bolen also filed a motion for partial summary judgment on his claims against NMRC. A hearing on the two motions took place. Following the hearing, the district court granted Bolen's motion for summary judgment, in part, and denied NMRC's motion. The district court concluded that NMRC is not entitled to quasi-judicial immunity based on the distinction between the types of claims for relief allowed under 42 U.S.C. § 1983, versus those allowed under the CRA. Specifically, the district court reasoned that because "[t]he immunities available under [§] 1983 are based in public policy that

---

[4] In his complaint, Plaintiff also sought injunctive relief and alleged that NMRC violated the New Mexico Inspection of Public Records Act (IPRA), NMSA 1978, § 14-2-1 (2019, amended 2023), on the basis that NMRC failed to respond to his IPRA request within fifteen days. *See* NMSA 1978, § 14-2-11(C) (1993).

protects an individual defendant from personal liability for damages" and this public policy is not at issue under the CRA—NMRC is not immune from suit.

{5} Following the district court's denial of its motion, NMRC promptly filed both an application for interlocutory appeal and petition for writ of error to this Court. We granted both and consolidated the appeals.

**DISCUSSION**

{6} We begin by determining whether judicial immunity, as well as its extension—quasi-judicial immunity, is a defense available to public bodies sued under the CRA.[5] Because we conclude—based on our plain language interpretation of the relevant statutory section—that it is, we then determine whether NMRC is entitled to quasi-judicial immunity for the claims brought against it by Bolen. We hold that NMRC is entitled to quasi-judicial immunity under the facts of this case.

**I.      Standard of Review**

{7} We review the district court's denial of summary judgment de novo, *see Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 5, 137 N.M. 339, 110 P.3d 1076, viewing the facts in a light most favorable to the nonmoving party and drawing

---

[5]As we discuss in depth below, quasi-judicial immunity is the extension of judicial immunity "to various persons whose adjudicatory functions or other involvement with the judicial process have been thought to warrant protection from harassment, intimidation, or other interference with their ability to engage in impartial decision-making." *Hunnicutt v. Sewell*, 2009-NMCA-121, ¶ 9, 147 N.M. 272, 219 P.3d 529 (internal quotation marks and citation omitted).

all reasonable inferences in support of a trial on the merits. *Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, ¶ 7, 140 N.M. 205, 141 P.3d 1259. "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241.

**II.    Quasi-Judicial Immunity is a Defense Available to Public Bodies Under Section 41-4A-10 of the CRA**

{8}    NMRC asserts that the district court erred in concluding that a public body cannot raise quasi-judicial immunity as a defense under the CRA—arguing that Section 41-4A-10 explicitly preserves this defense. Bolen does not dispute NMRC's argument that quasi-judicial immunity can apply to a public body under the CRA. We agree with NMRC that the district court erred.

{9}    We review Section 41-4A-10 de novo. *See Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69 ("Statutory interpretation is a question of law, which we review de novo."). "When construing statutes our charge is to determine and give effect to the Legislature's intent." *Wild Horse Observers Ass'n v. N.M. Livestock Bd.*, 2022-NMCA-061, ¶ 8, 519 P.3d 74 (internal quotation marks and citation omitted). "New Mexico courts have long honored this statutory command through application of the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Quynh Truong v.*

*Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (text only) (citation omitted). "Statutes must also be construed so that no part of the statute is rendered surplusage or superfluous, and we will not read into a statute language which is not there." *Am. Fed'n of State, Cnty. & Mun. Emps. v. City of Albuquerque*, 2013-NMCA-063, ¶ 5, 304 P.3d 443 (omission, internal quotation marks, and citations omitted). Moreover, "[w]e consider all parts of the statute together, reading the statute in its entirety and construing each part in connection with every other part to produce a harmonious whole." *Dep't of Game & Fish v. Rawlings*, 2019-NMCA-018, ¶ 6, 436 P.3d 741 (alterations, internal quotation marks, and citation omitted).

{10}     Pursuant to the CRA, a person can bring an action "to establish liability and recover actual damages and equitable or injunctive relief in any New Mexico district court" for the deprivation of their rights under the New Mexico Constitution "due to acts or omissions of a public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body." Section 41-4A-3(B). Moreover, under the CRA, a claim may only be brought against a public body, not an individual. Section 41-4A-3(C). The CRA defines "public body" as "a state or local government, an advisory board, a commission, an agency or an entity created by the constitution of New Mexico or any branch of government that receives public funding." Section 41-4A-2. The parties do not dispute that NMRC qualifies as a

"public body" within the meaning of Section 41-4A-2—NMRC is a state agency created by the Horse Racing Act to regulate the sport and industry of racing.

{11} The statutory section at issue in this case is Section 41-4A-10, which states,

> The prohibition on the use of the defense of qualified immunity pursuant to Section 41-4A-10 . . . of the New Mexico [CRA] and the waiver of sovereign immunity pursuant to Section 41-4A-9 . . . of that act shall not abrogate judicial immunity, legislative immunity or any other constitutional, statutory or common law immunity.

NMRC contends that because Section 41-4A-10 expressly states that judicial immunity is not abrogated by the prohibition on the defense of qualified immunity and the waiver of sovereign immunity within Sections 41-4A-4 and -9 of the CRA—it is a defense available under the CRA. Moreover, according to NMRC, this language read together with Section 41-4A-3(C), which limits claims under the CRA to those "brought exclusively against a public body," signifies that a public body sued pursuant to the CRA may raise judicial immunity as a defense. Interpreting the statute otherwise, according to NMRC, would render Section 41-4A-10 "meaningless and unnecessary."

{12} Reading Sections 41-4A-10, -2, and -3(C) together—we hold that a public body that is sued under the CRA may raise judicial immunity, as well as quasi-judicial immunity, as a defense. *See State v. Farish*, 2021-NMSC-030, ¶ 11, 499 P.3d 622 (stating that the Court reads statutes as a whole and that "[t]he Legislature is presumed not to have used any surplus words in a statute; each word must be given

7

meaning" (internal quotation marks and citation omitted)). The plain language of Section 41-4A-10, read alone, functions as an affirmation of judicial immunity. To interpret Section 41-4A-10 as abrogating judicial immunity for a public body sued under the CRA, as the district court did, would be to disregard the plain language of the statute. Because the plain language of Section 41-4A-10 is unambiguous, as NMRC suggests, no further interpretation is necessary and it was an error for the district court to look to the immunities under § 1983 to elucidate the intent of the Legislature. *See Elite Well Serv., LLC v. N.M. Tax'n & Revenue Dep't*, 2023-NMCA-041, ¶ 19, 531 P.3d 635 (stating when interpreting a statute, "[i]t is only where the literal meaning of a statute would be absurd, unreasonable, or otherwise inappropriate in application that we go beyond the mere text of the statute" (internal quotation marks and citation omitted)). Therefore, we conclude that the district court erred in its determination that quasi-judicial immunity is not a defense available to a public body sued pursuant to the CRA. Accordingly, NMRC, as a public body, may raise quasi-judicial immunity as a defense to the claims brought against it by Bolen.

**III.    NMRC Is Entitled to Quasi-Judicial Immunity**

{13}    Having determined that quasi-judicial immunity is a defense available to public bodies sued under the CRA, we now determine whether NMRC is entitled to quasi-judicial immunity for the claims brought against it by Bolen. We "review

8

questions of immunity de novo." *Hunnicutt v. Sewell*, 2009-NMCA-121, ¶ 8, 147 N.M. 272, 219 P.3d 529. NMRC argues that it is entitled to quasi-judicial immunity because the actions taken by it in initiating and prosecuting the administrative proceeding against Bolen were quasi-judicial since "Bolen was provided a full hearing before the [b]oard of [s]tewards, was represented by counsel, and was days away from an additional hearing before an administrative law judge when he withdrew his appeal." Bolen responds by arguing that NMRC is not entitled to quasi-judicial immunity here because it initiated the administrative proceeding "maliciously," "as retaliation for protected speech and petitioning activity and therefore cannot justify the remainder of their actions." We agree with NMRC.

{14}    "Judicial immunity was developed to preserve the autonomy and integrity of the judiciary so that persons who are integral to the judicial process are able to perform their functions without the intimidating effect of potential lawsuits." *Id.* ¶ 9 (alteration, internal quotation marks, and citation omitted). Quasi-judicial immunity is the extension of judicial immunity "to various persons whose adjudicatory functions or other involvement with the judicial process have been thought to warrant protection from harassment, intimidation, or other interference with their ability to engage in impartial decision-making." *Id.* (internal quotation marks and citation omitted); *see also Lowrey v. Castillo*, 2024-NMCA-034, ¶ 9, ___ P.3d ___ (A-1-CA-40083, Jan. 29, 2024). "These persons are absolutely immune from

liability for their actions taken in performance of their roles as integral parts of the judicial process." *Hunnicutt*, 2009-NMCA-121, ¶ 9 (internal quotations marks and citation omitted). Although much of the language in our case law discusses judicial immunity in the context of individuals, rather than an agency or other type of public body, there is no indication that judicial immunity is a defense limited only to individuals. *See id.* ¶ 1 (concluding that the Administrative Office of the Courts and the Twelfth Judicial District Court, as defendants, were entitled to judicial immunity).

{15} New Mexico courts have recognized quasi-judicial immunity for persons involved in administrative proceedings. *See City of Albuquerque v. Chavez*, 1997-NMCA-054, ¶ 17, 123 N.M. 428, 941 P.2d 509 (recognizing the Tenth Circuit's holding that administrative hearing officers are entitled to absolute immunity where their "duties and the procedures employed are functionally comparable to those of a court of law" (internal quotation marks and citation omitted)); *see also Collins ex rel. Collins v. Tabet*, 1991-NMSC-013, ¶ 18, 111 N.M. 391, 806 P.2d 40 (acknowledging the U.S. Supreme Court's extension of "absolute immunity to various persons whose adjudicatory functions or other involvement with the judicial process have been thought to warrant protection from harassment, intimidation, or other interference with their ability to engage in impartial decision-making"), *abrogated on other grounds by State v. Mares*, 2024-NMSC-002, ¶¶ 2, 32, 543 P.3d

1198. However, we have yet to develop a framework for determining when an administrative agency or official is entitled to quasi-judicial immunity.

{16} In *Kimbrell v. Kimbrell*, 2014-NMSC-027, ¶ 12, 331 P.3d 915, our Supreme Court adopted the framework from a federal case, *Ward v. San Diego Cnty. Dep't of Soc. Serv*s., 691 F. Supp. 238, 240 (S.D. Cal. 1988), in determining whether a guardian ad litem was entitled to quasi-judicial immunity as an "arm of the court." *See Kimbrell*, 2014-NMSC-027, ¶¶ 12-13 (internal quotation marks and citation omitted); *see also Lowrey*, ___-NMCA-___, ¶ 8 (applying this framework for determining whether a parole officer was entitled to quasi-judicial immunity as an "arm of the court"). However, the facts of this case are distinct from those in *Kimbrell and Lowrey*, because NMRC is not alleged to be an "arm of the court." Because there is a gap in our case law concerning when an administrative official or agency is absolutely immune from suit on the basis of quasi-judicial immunity, we look to federal law for guidance. *See Akins v. United Steel Workers of Am.*, 2010-NMSC-031, ¶ 15, 148 N.M. 442, 237 P.3d 744 ("In developing a body of state common law, we may look to federal law for guidance where it is persuasive and consistent with our state law and policies.").

{17} In *Butz v. Economou*, the United States Supreme Court held that federal administrative officials are absolutely immune from suit where they were performing quasi-judicial functions. *See* 438 U.S. 478, 514 (1978) (holding "that

11

persons . . . performing adjudicatory functions within a federal agency are entitled to absolute immunity from damages liability for their judicial acts [and t]hose who complain of error in such proceedings must seek agency or judicial review"). The United States Supreme Court held that absolute immunity applies "to administrative officials performing functions analogous to those of judges and prosecutors if the following formula is satisfied: (a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' action must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." *Horwitz v. State Bd. of Med. Exam'rs of State of Colo.*, 822 F.2d 1508, 1513 (10th Cir. 1987) (summarizing the holding in *Butz*).

{18}    The Tenth Circuit has recognized the holding in *Butz* to apply to "cases involving state administrative/executive officials serving in adjudicative, judicial, or prosecutorial capacities." *Id.* at 1515. In *Horwitz*, the United States Court of Appeals for the Tenth Circuit concluded that board members of the Colorado State Board of Medical Examiners "who performed statutory functions both adjudicatory and prosecutorial in nature" were entitled to absolute immunity from suit for claims brought against them under § 1983. *Id.* at 1509, 1515. The Tenth Circuit noted that the board members served in a prosecutorial role "in that they, among other things, initiate complaints, start hearings, make investigations, take evidence, and issue

subpoenas." *Id.* at 1515. Moreover, the Tenth Circuit concluded that the board members served in an "adjudicative role, as judges." *Id.* Reiterating the holding in *Butz*, the Tenth Circuit reasoned that "such officials who perform adjudicatory functions within [an] agency, who must decide to initiate or pursue a proceeding subject to agency adjudication, and agency personnel who present evidence in such proceedings, are entitled to absolute immunity." *Id.* at 1513.

{19}     In *Gerhardt v. Mares*, the United States District Court for the District of New Mexico addressed a case factually analogous to the case at bar. *See* 179 F. Supp. 3d 1006 (D.N.M. 2016). In that case, the plaintiff, a licensee of NMRC, was found to be in violation of a rule and as a result his horse was scratched from a race. *See id.* at 1013. The licensee filed an appeal with NMRC, a hearing officer was appointed, and a hearing was held on the matter. *Id.* at 1014. The licensee brought suit against NMRC, its director, a steward, and several racing commissioners—alleging, among other things, a violation of his constitutional rights. *Id.* at 1014-15. The defendants, including the racing commissioners, "argue[d] that they [were] entitled to absolute immunity, because they [were] performing quasi-judicial functions." *Id.* at 1019. The United States District of New Mexico court agreed, in respect to the defendant racing commissioners, holding that they had absolute quasi-judicial immunity from the licensee's claims. *Id.* at 1058. This holding was based on the District of New Mexico court's conclusion that "[t]he [r]acing [c]ommissioners' functions [were]

13

similar to those of judges in a judicial process[, t]heir decisions are highly likely to cause litigation[, and f]inally the regulatory scheme contains sufficient safeguards to prevent unconstitutional conduct."[6] *Id.*

{20}     We are persuaded by the framework relied on by the United States Supreme Court, Tenth Circuit court, and District of New Mexico court. Applying such framework to the facts of this case, we conclude that NMRC is entitled to quasi-judicial immunity.

**A.     NMRC's Actions Were Functionally Comparable to Those Involved in a Judicial Process**

{21}     First, NMRC's actions in administering the administrative proceeding against Bolen are functionally comparable to those involved in a judicial process. NMRC prompts us to employ the "functional approach" used in *Hunnicutt* to determine whether its actions were judicial functions. *See* 2009-NMCA-121, ¶ 9 (applying a "functional test to determine whether the acts alleged . . . were judicial functions"). As far as we understand, Bolen agrees—as do we—that the functional approach applies here. Nevertheless, Bolen argues that because the administrative proceedings against him were commenced maliciously, the remainder of its actions were improper. "We therefore apply the functional analysis to determine whether" NMRC

---

[6]The District of New Mexico court concluded that the racing steward, who discovered the licensee's rule violation in the first place, was "not entitled to quasi-judicial immunity" because he was acting in a "ministerial and mechanical [role] compared to the [r]acing [c]ommissioner's role in the disputed events." *Id.* at 1060.

acted in a quasi-judicial nature. *See Lowrey*, ___-NMCA-___, ¶ 9 (applying the functional approach to determine whether the defendant "acted as an arm of the court").

{22}  In applying the functional analysis, we examine the administrative official or agencies' role in the process giving rise to the underlying allegations in order to determine whether it is quasi-judicial in nature. *See id.* ¶ 10. Similar to the sequence of events in *Gerhardt*, here, an administrative disciplinary proceeding was initiated against Bolen and a hearing was held. After the hearing, Bolen was found to have violated 16.47.1.8(L)(1)(i) NMAC. Bolen appealed the initial ruling pursuant to his rights and sought a hearing before an independent hearing officer. *See Gerhardt*, 179 F. Supp. 3d at 1058 (stating that "the [r]acing [c]ommissioners appointed a hearing officer to recommend a disposition of a particular dispute, the hearing officer conducted a hearing based on evidence, and the hearing officer provided a recommendation" (internal quotation marks and citation omitted)). NMRC stated that if "Bolen [had] not chosen to withdraw his appeal, the hearing officer would have heard the matter and provided findings of facts, conclusions of law, and a recommendation to the members of . . . NMRC." *See* 15.2.1.9(B)(15)(c) NMAC (setting out the process by which a hearing officer, after conducting a hearing, prepares a report containing findings of fact and conclusions of law for consideration by the commission). Moreover, if Bolen had been aggrieved by NMRC's final order,

15

"he could have sought review by a [d]istrict [c]ourt pursuant to Rule 1-075 NMRA." Bolen's ability to appeal NMRC's decision to this Court "indicates that [NMRC] is acting in a judicial function." *See Gerhardt*, 179 F. Supp. 3d at 1059.

**{23}** Turning to Bolen's argument that NMRC is not entitled to quasi-judicial immunity because its actions in initiating the administrative proceeding were improper, we disagree. Again, Bolen does not dispute that NMRC was acting in a quasi-judicial capacity, rather he attempts to distinguish NMRC's actions from the defendants' actions in *Butz*—arguing that the defendants' actions in *Butz* "were proper on their face but may have been taken for impermissible reasons." Whereas here, Bolen argues, "the initial actions taken by [NMRC]'s agents were improper as taken as retaliation for protected speech and petitioning activity and therefore cannot justify the remainder of their actions."

**{24}** We are not convinced that *Butz* can be distinguished from this case as Bolen argues—Bolen attacks NMRC's motive in initiating the proceeding. In *Butz*, the United States Supreme Court clarified that "a malicious intent will not subject a public officer to liability for performing his authorized duties as to which he would otherwise not be subject to damages liability," 438 U.S. at 493; however an official *will not* be excused from liability "if he failed to observe obvious statutory or constitutional limitations on his powers or if his conduct was a manifestly erroneous application of the statute." *Id.* at 494. Beyond merely asserting that NMRC acted

16

improperly in initiating the proceeding, Bolen has failed to provide either an argument or legal authority demonstrating how NMRC's actions in initiating and prosecuting an administrative disciplinary proceeding fall outside the bounds of NMRC's authority. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)).

{25} It is clear that "[w]hen evaluating whether judicial immunity applies, we do not examine the allegations of improper or illegal conduct . . . [r]ather, we focus on the role that the individual [or public body] claiming immunity played and evaluate whether that role was integral to the judicial process." *Hunnicutt*, 2009-NMCA-121, ¶ 13; *see also Lowrey*, ___-NMCA-___, ¶ 15 (acknowledging that "[e]ven when quasi-judicial immunity applies, however, an individual may not be entitled to its protection if the alleged misconduct was clearly and completely outside the scope of the individual's function as an arm of the court" (internal quotation marks and citation omitted)). Here, NMRC initiated and prosecuted an administrative disciplinary proceeding against Bolen—which included initiating the complaint, holding a hearing, taking evidence, and making an initial finding. Insofar as NMRC served in these "adjudicative, judicial, or prosecutorial" functions, *see Horwitz*, 822 F.2d at 1515, we conclude that NMRC's actions were functionally comparable to

17

those involved in the judicial process. We therefore weigh the first prong in favor of NMRC because NMRC's actions were in accordance with its quasi-judicial functions. *See* 16.47.1.8(L)(1) NMAC (authorizing NMRC to take disciplinary measures); *see also* 15.2.1.9 NMAC (setting out the rules of procedure for stewards' hearings and commission proceedings).

**B.    NMRC's Actions in Administering Such an Administrative Proceeding Are Highly Likely to Lead to Litigation**

{26}    Next, we turn to whether NMRC's actions in initiating and conducting such administrative proceedings are "likely to result in damages lawsuits by disappointed parties." *Gerhardt*, 179 F. Supp. 3d at 1029. As the court recognized in *Gerhardt*, "[t]he relatively large number of lawsuits in the District of New Mexico related to [NMRC]'s actions" exemplifies that its actions are highly likely to lead to litigation. *See id.* at 1059. If NMRC is concerned about liability from its action in enforcing the rules, its ability to "act independently" and hold fair administrative hearings could very well be impaired. *See Lowrey*, ___-NMCA-___, ¶ 12 (stating that "[i]f a probation officer is concerned about liability . . . the probation officer's ability to act independently and the court's ability to perform its duties could be impaired"). Therefore, the second prong also favors quasi-judicial immunity in this case.

18

## C. There Are Sufficient Procedural Safeguards to Protect Against Unconstitutional Conduct

{27} Lastly, addressing the third prong, we conclude that there are sufficient procedural safeguards here to control unconstitutional conduct. *See generally* 15.2.1.9(A) NMAC (5/24/2022) (setting out the rules of procedure for stewards' hearings and commission proceedings). Again, Bolen does not argue that there is a lack of such procedural safeguards, rather he takes issue with NMRC's motive in initiating the administrative proceeding in the first place. We therefore weigh the final prong in favor of NMRC.

## CONCLUSION

{28} Based on the foregoing, we conclude that NMRC is entitled to quasi-judicial immunity under the facts of this case, and therefore reverse and remand with instructions to enter summary judgment in favor of NMRC on Bolen's claims arising under the CRA.

{29} **IT IS SO ORDERED.**

_____
**KRISTINA BOGARDUS, Judge**

19

**WE CONCUR:**

_____

**SHAMMARA H. HENDERSON, Judge**

_____

**KATHERINE A. WRAY, Judge**